**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JONATHAN D. MARTIN, SBN 188744
  E-Mail: Jonathan.Martin@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

**ELLIOTT GREENLEAF, P.C.**
MARY E. KOHART (*pro hac vice*)
GREGORY S. VOSHELL (*pro hac vice*)
MICHELLE L. MODERY (*pro hac vice*)
  E-Mail: mek@elliottgreenleaf.com
          gsv@elliottgreenleaf.com
          mlm@elliottgreenleaf.com
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422
Telephone: 215.977.1073
Facsimile: 215.977.1099

Attorneys for Defendant HIGHER LEARNING COMMISSION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IVY BRIDGE UNIVERSITY, LLC f/k/a Ivy Bridge College, LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>HIGHER LEARNING COMMISSION, et al.,<br><br>        Defendant. | CASE NO. 3:15-cv-02187-SC<br><br>**DEFENDANT HIGHER LEARNING COMMISSION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE TO TRANSFER VENUE**<br><br>Date:   September 25, 2015<br>Time:   10:00 a.m.<br>Crtrm:  1, 17th Floor |

3:15-cv-02187-SC

DEFENDANT HIGHER LEARNING COMMISSION'S REPLY BRIEF IN SUPPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE TO TRANSFER VENUE

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT IN REPLY ..................................................................................................... 1

    A. Objection to the "Evidence" Relied Upon by Ivy Bridge ............................................... 1

    B. Ivy Bridge's Opposition Does Not Establish General Jurisdiction Over the Commission in California. ........................................................................................................................ 3

    C. The Commission Did Not Direct Any of its Actions Towards California for Purposes of Specific Jurisdiction. ............................................................................................................. 6

    D. Jurisdictional Discovery is Not Available ...................................................................... 9

    E. Venue is Improper, and Ivy Bridge Misconstrues the Relationships Between Itself, the Commission, and Tiffin. ...................................................................................................... 10

    F. Ivy Bridge Cannot Dispute that Litigating in this Forum is Exceedingly Inconvenient 13

III. CONCLUSION ................................................................................................................. 14

**TABLE OF AUTHORITIES**

*Androutsakos v. M/V PSARA*,
   Civ. A. No. 02-1173, 2003 U.S. Dist. Lexis 25519 (D. Or. July 7, 2003) .................................. 12

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) .................................................................................................. 8

*Cabell v. Zorro Prods.*,
   Civ. A. No. 13-00449, 2014 U.S. Dist. Lexis 149558 (W.D. Wash. Oct. 21, 2014) ................... 7

*Calder v. Jones*,
   465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 804 (1984) ............................................................... 8

*Daimler AG v. Bauman*,
   134 S. Ct. 746, 753, 187 L. Ed 2d 624 (2014) ..................................................................... 4, 5

*Donachy v. Intrawest United States Holdings, Inc.*,
   Civ. A. No. 10-4038, 2011 U.S. Dist. Lexis 79567 (D.N.J. July 21, 2011) .............................. 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) .............................................................................. 4

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
   466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed 2d 404 (1984) ........................................................... 8

*In re Infosonics Corp. Derivative Litig.*,
   Civ. A. No. 06-1336, 2007 U.S. Dist. Lexis 20450 (S.D. Cal. Mar. 21, 2007) .......................... 9

*Johnson v. Mitchell*,
   Civ. A. No. 10-1968, 2012 U.S. Dist. Lexis 28051 (E.D. Cal. Mar. 2, 2012) ............................ 9

*Mao v. Sanum Investments, Ltd.*,
   Civ. A. No. 14-721, 2014 U.S. Dist. Lexis 146983 (D. Nev. Oct. 15, 2014) ........................... 12

*Multistate Legal Studies, Inc. v. Marino*,
   Civ. A. No. 96-5118, 1996 U.S. Dist. Lexis 20752 (C.D. Cal. Nov. 5, 1996) .......................... 14

*Nureau Ink, LLC v. Zomba Recording, LLC*,
   Civ. A. No. 06-0945, 2006 U.S. Dist. Lexis 87240 (S.D. Cal. Nov. 29, 2006) ........................ 10

*Picot v. Weston*,

780 F.3d 1206 (9th Cir. 2015) .................................................................................................. 6, 7

*Ranza v. Nike, Inc.*,

App. No. 13-35251, 2015 U.S. App. Lexis 12290 (9th Cir. July 16, 2015) ........................ 3, 4, 5

*Sarkar v. Malik Ji India Int'l Bar & Rest., Inc.*,

Civ. A. No. 06-2746, 2006 U.S. Dist. Lexis 83104 (N.D. Cal. Nov. 6, 2006) ............................ 7

*Sawyer v. Bill Me Later, Inc.*,

Civ. A. No. 10-4461, 2011 U.S. Dist. Lexis 154784 (C.D. Cal. Oct. 21, 2011) .................. 10, 11

*Schwarzenegger v. Fred Martin Motor Co.*,

374 F.3d 797 (9th Cir. 2004) ....................................................................................................... 3

*Scott USA Inc. v. Patregnani*,

Civ. A. No. 14-482, 2015 U.S. Dist. Lexis 51028 (D. Idaho Apr. 16, 2015) ............................ 12

*Terracom v. Valley Nat'l Bank*,

49 F.3d 555 (9th Cir. 1995) ......................................................................................................... 9

*Walden v. Fiore*,

134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) ................................................................................... 6

*Welenco, Inc. v. Corbell*,

Civ. A. No. 13-287, 2013 U.S. Dist. Lexis 138980 (E.D. Cal. Sept. 26, 2013) ........................ 11

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,

433 F.3d 1199 (9th Cir. 2006) ..................................................................................................... 8

## I. INTRODUCTION

Defendant Higher Learning Commission ("the Commission") respectfully submits this Reply Brief in support of its Motion to Dismiss, or in the Alternative to Transfer Venue. Plaintiff Ivy Bridge University, LLC's ("Ivy Bridge") Opposition Brief fails to cure the fatal flaws in the facts and allegations serving as the basis for its assertion that this Court has jurisdiction over the Commission, or that venue is proper in this District. Specifically, Ivy Bridge's Opposition (1) overstates the Commission's tenuous connection to the forum for purposes of general jurisdiction; (2) confuses the standard required to find that the Commission purposefully directed its conduct towards California for the purposes of specific jurisdiction; (3) ignores Ivy Bridge's own allegations regarding the relationships between the parties and Tiffin University in attempting to show that venue in this District is proper; and (4) fails to state any credible basis in support of its argument that California is the most convenient and proper forum to adjudicate this action. Accordingly, for the reasons set forth in the Commission's moving papers and for the additional reasons below, this Court should grant the Commission's Motion.

## II. ARGUMENT IN REPLY

### A. Objection to the "Evidence" Relied Upon by Ivy Bridge.

As an initial matter, the Commission objects to flamboyant inferences drawn in and from the Declaration of Andrew N. Klein filed by Ivy Bridge in support of its Opposition Brief. In paragraphs 2-5 of Mr. Klein's Declaration and the attached exhibits, Mr. Klein declares that he "went to the HLC website . . . to determine whether and how many campuses each one of those institutions [accredited by the Commission] has in California." Klein Decl. ¶ 2. After making his count, Ivy Bridge launches the extraordinary inference that, because certain schools accredited by the Commission have satellite campuses in California of indeterminate size and function, the Commission therefore employs "multiple employees and representatives at a time" in California. (See Opposition Brief ("Opp. Br.") at 7.) Of course, this inference is ridiculous and cannot be considered by the Court on this Motion. The Commission has already advised the Court that some

of the schools it accredits (which have their main operation in the Midwestern part of the United States) have opened satellite campuses in California.[1]  The Commission has already advised the Court what that has meant in terms of the number of visits its volunteer peer reviewers and employees have made to California, and the purpose of the visits.  It is plain that there are no "multiple employees and representatives" performing peer reviews of college campuses in California – there are, instead, a few sporadic visits by Commission employees and volunteer peer reviewers when necessary to review the satellite campus of an institution that has its base somewhere else.

Consequently, the Klein Declaration, and the flamboyant inferences which Ivy Bridge seeks to have drawn from that declaration in no way carries Ivy Bridge's burden of showing either general or special jurisdiction over the Commission in California.  In fact, as discussed below, even if the Commission had "multiple employees and representatives" visiting California satellite campuses, it is abundantly clear from both Supreme Court and Ninth Circuit case law that such visits would be insufficient to permit the exercise of general jurisdiction over the Commission or, because these visits were unrelated to Ivy Bridge or Tiffin, the exercise of specific jurisdiction

---

[1] In addition, the list prepared by Mr. Klein is not an accurate list of institutions currently accredited by the Commission.  Two of the institutions cited in the list, Argosy University and Ashford University, have not been accredited by the Commission for several years and are included on the Commission's website only for historical purposes.  *See* Higher Learning Commission, "Currently or Previously Affiliated Institutions – 09/09/2015", Directory, https://www.hlcommission.org/component/directory/?Itemid=&form_submitted=TRUE&institution=argosy&lang=en&showquery=&siteOrg=&state=ANY&submit=Search (listing Argosy University's accreditation status as "Inactive-Withdrawn"); *see also* https://www.hlcommission.org/component/directory/?Itemid=&form_submitted=TRUE&institution=ashford&lang=en&showquery=&siteOrg=&state=ANY&submit=Search (listing Ashford University's accreditation status as "Inactive-Status Resigned").  The inactive statuses of these institutions is clearly apparent on the Commission's website—the very same website that Mr. Klein avers he consulted in preparing his Declaration.  Argosy University and Ashford University resigned their accreditation with the Commission and relocated their accreditation to the Western Association of Colleges and Schools after the Commission determined that the shift of the locus of control of campus operations to California rendered the institutions no longer able to meet the Commission's jurisdictional requirements.

2                                  3:15-cv-02187-SC
DEFENDANT HIGHER LEARNING COMMISSION'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS, OR IN THE ALTERNATIVE TO TRANSFER VENUE

over the Commission in this case. Therefore, the Court should not consider Mr. Klein's averments in connection with its resolution of the Commission's Motion.[2]

### B. Ivy Bridge's Opposition Does Not Establish General Jurisdiction Over the Commission in California.

The Commission's presence in California is not significant and constant enough to justify a finding of general jurisdiction, and Ivy Bridge does not cite a single case where a court exercised general jurisdiction over an out-of-state defendant under the facts presented here. For general jurisdiction to exist, the Court must find that the Commission's contacts with California are continuous and systematic, which "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (finding no general jurisdiction over Ohio car dealership that used plaintiff's image in advertising even though it purchased cars from California-based importers, hired a California-based sales training company, and used a California-based direct mail marketing company). The Ninth Circuit's recent opinion in *Ranza v. Nike, Inc.*, App. No. 13-35251, 2015 U.S. App. Lexis 12290 (9th Cir. July 16, 2015) shows exactly why Ivy Bridge's assertion of general jurisdiction is incorrect. In *Ranza*, the plaintiff sued her employer, NEON, for employment discrimination in the District of Oregon. *Id.* at *2. The Ninth Circuit affirmed the district court's determination that there was no general or specific jurisdiction over NEON. NEON was incorporated, had its principal place of business, had offices, paid taxes, and had over 1,000 employees in the Netherlands. *Id.* at *13. None of its employees were stationed in Oregon. *Id.* While NEON had 20 to 27 employees working in Oregon, had other employees who took up to 47 trips per month to Oregon to conduct business meetings, entered into contracts with Oregon businesses, and sold its products in Oregon stores, none of these facts, alone or together, were

---

[2] And, as discussed in Part II.D *infra*, Ivy Bridge cannot "cure" its failure to set forth facts sufficient to establish jurisdiction over the Commission by belatedly requesting jurisdictional discovery.

sufficient to permit the exercise of either general or personal jurisdiction over NEON. *Id.* at *13-14. The Court found that NEON's relationship to Oregon was merely that it "sends employees and products into Oregon and engages in commercial transactions there, but such business activity is not so pervasive as to render it 'essentially at home' in Oregon." *Id.* at *15 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed 2d 624 (2014)).

While Ivy Bridge repeatedly references the "at home" language used by Supreme Court and the Ninth Circuit, it does not include the context in which the "at home" language was used: in both the Ninth Circuit and the Supreme Court, the "at home" language is used to underscore that a corporation is subject to general jurisdiction essentially in only that state or states where it has its domicile and/or domestic enterprises. The "at home" language is not intended to impose general jurisdiction over corporate defendants simply because they know their way around a state, send products into commerce in that state, have employees in that state, or enter into contracts with businesses located in that state (events which might allow the exercise of specific jurisdiction in claims arising from those activities, but not general jurisdiction). A corporation's activities in the forum state must be akin to it being domiciled or having domestic enterprises in that forum for a court to exercise general jurisdiction. "Moreover, the general jurisdiction inquiry examines a corporation's activities worldwide – not just the extent of its contacts in the forum state – to determine where it can be rightly considered at home." *Id.* at *15-16. The *Ranza* Court found that in comparison with NEON's extensive contacts in Europe, where the vast majority of its employees and business activities were located, its limited activities in Oregon were far from sufficient to support a finding of general jurisdiction. *Id.* at *16.

The Supreme Court's decisions on general jurisdiction likewise make clear that no general jurisdiction can be asserted over the Commission here. For example, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the Court found that Texas did not have general jurisdiction over a Colombian corporation which sent executive employees to and from Texas, accepted checks drawn on a Texas bank, purchased helicopters and equipment from a Texas corporation, and sent employees to Texas for training. 466 U.S. 408, 416-18, 104 S. Ct. 1868, 80 L. Ed 2d 404 (1984). Similarly, in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the Court held that a North

1  Carolina court could not assert general jurisdiction over a foreign company that manufactured tires
2  distributed in the "stream of commerce" in North Carolina.  131 S. Ct. 2846, 2854-57, 180 L. Ed
3  2d 796 (2011).  Finally, in *Daimler AG v. Bauman*, the Court reversed the Ninth Circuit's finding
4  of general jurisdiction over a German company which had a subsidiary that had extensive links to
5  California relating to importing and exporting of goods made by the parent.  134 S. Ct. at 758-62.

6        The Commission's argument here that it is not subject to general jurisdiction in California
7  is even stronger than the NEON defendant's arguments in *Ranza*.  The Commission has no
8  employees in California (compared to NEON's 20-27 employees in Oregon); the Commission has
9  no subsidiaries in California or subsidiaries that engage in significant activities in California; the
10 Commission has no offices in California and pays no tax to California; Commission employees
11 and volunteers are in California on Commission activities significantly less than 47 times a month
12 – indeed, even less than 47 times a year; and the Commission is not alleged to have entered into
13 any contracts with California-based businesses and does not "solicit" business from California
14 residents.  Indeed, Ivy Bridge appears to admit that any California-based activity required of the
15 Commission arises only involuntarily: if a school with a primary location outside California
16 decides to open a satellite campus inside California, the Commission may be required to visit that
17 campus as part of its overall accreditation of an institution.  In short, the Commission's "contacts"
18 in this case are far less than those **rejected** as insufficient by the courts in *Ranza*, *Helicopteros*,
19 *Goodyear*, and *Daimler*.  In addition, there is absolutely no evidence to support Ivy Bridge's
20 unfounded assertion that the Commission employs "multiple employees and representatives at a
21 time" in California.  (*See* Opp. Br. at 7.)  To the contrary, the evidence establishes that the
22 Commission's occasional visits to California branch campuses involve one or two volunteer peer
23 reviewers spending a day at the campus to verify that the location exists.  (*See* Decl. of Dr.
24 Andrew Lootens-White, attached to the Commission's Mot.)

25       In sum, binding Supreme Court and Ninth Circuit case law establishes that the mere
26 presence of some corporate activity in a state is insufficient to find that a corporation is
27
28

"essentially at home" in California.³  None of the exceedingly rare bases for finding general jurisdiction over an out-of-state corporation even remotely exists in this case.  Accordingly, the Court should grant the Commission's Motion to Dismiss for lack of general jurisdiction.

### C. The Commission Did Not Direct Any of its Actions Towards California for Purposes of Specific Jurisdiction.

Ivy Bridge next argues that even if this Court lacks general jurisdiction over the Commission, the allegations in the Complaint suffice to establish specific jurisdiction in this case. Specifically, Ivy Bridge argues that the Commission's actions were individually targeted at Ivy Bridge, a California resident, and that alone should establish jurisdiction. To find specific jurisdiction over a tort claim, the court must find that the defendant expressly aimed its intentional acts at the forum state. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). For tortious interference claims (which form the crux of Ivy Bridge's Complaint), the court "must ask whether [the defendant] expressly aimed such interference at California." *Id.*  The Ninth Circuit has explained that the court "must focus on the defendant's contacts with the forum state, ***not the defendant's contacts with a resident of the forum.***" *Id.* (emphasis added) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014)).

In *Picot*, the plaintiff, a California resident, sued his former business partner based on an email the former partner sent to a third party in which he threatened to sue that third party if it carried out its contract with the plaintiff. *Id.* at 1210. The plaintiff argued that the court had jurisdiction over his intentional interference claim because the former partner "targeted" a California resident with his actions. *Id.* at 1214. The Ninth Circuit disagreed, holding that the defendant's actions in making statements which caused an out-of-state corporation to allegedly

---

³ Accepting Ivy Bridge's theory of general jurisdiction would mean that any kind of suit could be brought against the Commission in California, no matter where it arose or the citizenship of the plaintiff. Even Ivy Bridge does not go so far as to contend that any case—for instance, breach of contract to purchase paper from a company in New Mexico; concerns by a school in Ohio about its accreditation with the Commission; or a wrongful termination claim by an employee in Illinois—could be brought in California. The Court must avoid that unjust and absurd result.

breach a contract was done "from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California. In short, none of [the defendant's] challenged conduct had anything to do with [California] itself." *Id.* at 1215. In addition, the Ninth Circuit found that the plaintiff's injury was not tethered to California in any meaningful way, but rather was personal to him and would follow him wherever he might choose to live or travel. *Id.*; *see also Cabell v. Zorro Prods.*, Civ. A. No. 13-00449, 2014 U.S. Dist. Lexis 149558, at *16-17 (W.D. Wash. Oct. 21, 2014) (granting a motion to dismiss a tortious interference claim for lack of specific jurisdiction, where the defendant allegedly wrote a letter to a German third party threatening to sue if a copyrighted work was performed, because the alleged interference occurred entirely in Germany, not in Washington where the plaintiff resided).

The allegations here are strikingly similar to those at issue in *Picot*. The Commission's allegedly tortious acts (in conducting accrediting activities at Tiffin and allegedly threatening to withdraw Tiffin's accreditation) were conducted in Illinois and Ohio, without entering California. The Commission is not alleged to have contacted any California resident or otherwise to have reached out to anyone in California. Mr. Paul Freedman, whose status as a California resident is alluded to in his Declaration and in the Opposition Brief, is immaterial to the question of whether the Commission expressly aimed its acts at the forum state. *See Sarkar v. Malik Ji India Int'l Bar & Rest., Inc.*, Civ. A. No. 06-2746, 2006 U.S. Dist. Lexis 83104, at *7 (N.D. Cal. Nov. 6, 2006) (granting a motion to dismiss for lack of personal jurisdiction because "harm alone to a California resident is insufficient. [The plaintiff] must also prove that [the defendant] expressly aimed its acts at California"). The Commission's alleged acts had to do with Tiffin, an Ohio university, and had nothing to do with the state of California itself.[4]  Ivy Bridge's alleged injury is not tied to

---

[4] Ivy Bridge also represented itself to the Commission during the Change of Control review as operating out of its campus in Toledo, Ohio, and under the control of Tiffin in Ohio, which is contrary to what it is now alleging about the size of its California corporation and the California corporation's control over Ivy Bridge.

California, as it would have occurred in any state in which Ivy Bridge chose to locate itself and conduct business.

Further, each of the cases that Ivy Bridge relies upon is entirely inapposite. First, *Yahoo! Inc. v. La Ligue Contre Le Racisme* involved a declaratory judgment action to deem two French judgments invalid. 433 F.3d 1199 (9th Cir. 2006). The defendants filed an action in France which sought, and the French court granted, orders specifically directing Yahoo! to perform significant acts in California, which was enough for California to exercise jurisdiction over the defendants. *Id.* at 1209. Second, *Calder v. Jones* is a defamation case in which the defendant wrote a libelous story about the California activities of a California celebrity, drawn from California sources, and where the harm to the celebrity's reputation was suffered in California. 465 U.S. 783, 788-89, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). The Court noted that "the focal point of the story and of the harm suffered" was California, and therefore the defendant purposely directed its actions towards California. *Id.* at 789. Third, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.* was a trademark dispute in which the defendant sent a letter to an internet domain name registrar, challenging the plaintiff's use of a particular domain name associated with the defendant. 223 F.3d 1082, 1085 (9th Cir. 2000). That letter was intended to trigger a dispute resolution policy of the internet domain name registrar, which forced the plaintiff to bring suit or lose control of its website. *Id.* at 1087. The Ninth Circuit found specific jurisdiction over the defendant because it individually targeted the California plaintiff and the business it conducted exclusively in California. *Id.* at 1088.

None of the above cases involve or apply to a defendant's actions in connection with a claim for tortious interference, and therefore the cases are inapplicable on their faces. And, in any event, the facts and circumstances of those cases are completely different from the facts of this case. Unlike *Yahoo!*, none of the Commission's alleged acts required Ivy Bridge (or any other entity) to take any action in California. Unlike *Calder*, the Commission never made any libelous writings about a California resident which were then circulated in California. And unlike *Bancroft*, none of the Commission's alleged acts were intended to force a California resident to take specific acts in California. To the contrary, the allegations in the Complaint make it clear that

Ivy Bridge complains about the Commission's accrediting activities as they related to Tiffin, an Ohio university, and were allegedly focused on ensuring that Tiffin complied with certain standards of accreditation promulgated by the Commission in Illinois.

For all of these reasons, this Court does not have specific jurisdiction over the Commission in this case and, consequently, the Court should grant the Commission's Motion to Dismiss for lack of specific jurisdiction.

### D.  Jurisdictional Discovery is Not Available.

Perhaps recognizing that it has not adduced sufficient evidence to support its assertions that this Court has personal jurisdiction over the Commission, Ivy Bridge resorts to asking for jurisdictional discovery to search for supporting evidence.  "In considering a motion to dismiss for lack of personal jurisdiction, a court may either postpone the decision and permit discovery, determine the motion on the basis of the pleadings and affidavits, or hold an evidentiary hearing." *Johnson v. Mitchell*, Civ. A. No. 10-1968, 2012 U.S. Dist. Lexis 28051, at *43, 45 (E.D. Cal. Mar. 2, 2012) (denying a request for jurisdictional discovery where the plaintiff failed to make a colorable showing of jurisdiction and where the request was made "to fish on a hunch that something might be caught in a widely-caught net").  Discovery is not permitted where the plaintiff's claim of jurisdiction is attenuated and based on bare allegations in the face of specific denials made by the defendant.  *Id.* at *44 (citing *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).  Such a request should occur prior to the plaintiff's opposition to a motion to dismiss for lack of personal jurisdiction, not as a last-ditch excuse when the court should deny the motion yet still permit the plaintiff to go on a fishing expedition in search of facts to support its claims.  *See, e.g.*, *In re Infosonics Corp. Derivative Litig.*, Civ. A. No. 06-1336, 2007 U.S. Dist. Lexis 20450 (S.D. Cal. Mar. 21, 2007) (granting an application by the plaintiff to conduct jurisdictional discovery, which was filed immediately after the defendant's motion to dismiss for lack of personal jurisdiction).

Ivy Bridge has chosen to fully respond to the Commission's Motion, and has cited various documents and testimonial evidence to support its assertion of jurisdiction.  If Ivy Bridge truly needed discovery in order to support its claims, it should have requested that discovery prior to

responding to the Commission's Motion.  Ivy Bridge cannot choose to respond in full to the Motion, ***and at the same time*** ask the Court to grant it a reprieve in the event that it fails to satisfy its burden to establish jurisdiction.  Moreover, Ivy Bridge does not identify any specific facts that would, if established in discovery, demonstrate personal jurisdiction over the Commission.  For these reasons, the Court should not allow any jurisdictional discovery in this matter.

### E. Venue is Improper, and Ivy Bridge Misconstrues the Relationships Between Itself, the Commission, and Tiffin.

Ivy Bridge responds to the Commission's arguments regarding the forum selection clauses in the Commission's bylaws, and in the contract between Ivy Bridge and Tiffin, by attempting to distinguish applicable case law and by diverting the Court from the actual, documented relationship between itself, the Commission, and Tiffin.  None of these efforts are persuasive.

First, Ivy Bridge rejects the clear application of the forum selection clause in the Commission's bylaws that requires this case to be brought in the Northern District of Illinois.  In particular, Ivy Bridge contends that the Commission must show that Ivy Bridge is a third party beneficiary to the bylaws in order for it to be bound by the forum selection clause contained therein.  That argument grossly misrepresents the law in the Ninth Circuit.  It is well settled that a forum selection clause may be enforced against non-signatories where their alleged conduct is "closely related to the contractual relationship." *Nureau Ink, LLC v. Zomba Recording, LLC*, Civ. A. No. 06-0945, 2006 U.S. Dist. Lexis 87240, at *16-17 (S.D. Cal. Nov. 29, 2006).  In fact, even in the very case that Ivy Bridge relies upon reinforces that principle.  In *Sawyer v. Bill Me Later, Inc.*, Civ. A. No. 10-4461, 2011 U.S. Dist. Lexis 154784 (C.D. Cal. Oct. 21, 2011), WebBank, a non-signatory to a contract containing a forum selection clause, moved to enforce the forum selection clause against the plaintiff.  The court rejected the suggestion (echoed by Ivy Bridge in its Opposition Brief) that WebBank would only have standing to enforce the forum selection clause if was a third-party beneficiary, a successor in interest, or an agent intended to benefit from

the contract. *Id.* at *11-12.[5]  Instead, the court expressly cited and followed the "closely related" test articulated in *Nureau Ink*, and found that WebBank had standing to enforce the forum selection clause because "WebBank's contractual relationship with BML [a signatory to the contract] is ***closely related*** to Plaintiff's contractual relationship with BML." *Id.* at *12-13.  Ivy Bridge's reliance on *Sawyer* thus actually undermines its position.

Second, Ivy Bridge attempts to distinguish the facts of the cases cited in the Commission's Motion, in an effort to show that Ivy Bridge and Tiffin are not sufficiently "closely related."  Yet even a cursory review of the evidence shows that the relationship between those two entities was intertwined from the very beginning.  Tiffin and Ivy Bridge, LLC entered into a joint venture with the express purpose of establishing a "jointly subscribed and cooperatively operated" company called Ivy Bridge College, LLC, which would then develop programs that would be accredited as part of Tiffin itself.  (*See* Exhibit C to the Compl. at 4-5.)  It is hard to imagine circumstances in which two entities are more closely related.

Ivy Bridge then turns to unpublished case law to support its argument, yet the cases cited by Ivy Bridge are entirely inapposite.  Those cases (1) are from other jurisdictions, (2) involve non-signatories attempting to enforce forum selection clauses (instead of a forum selection clause being enforced against a non-signatory), or (3) involve facts that do not even approximate the intimately associated relationship between Tiffin and Ivy Bridge.  *See Welenco, Inc. v. Corbell*, Civ. A. No. 13-287, 2013 U.S. Dist. Lexis 138980, at *22 (E.D. Cal. Sept. 26, 2013) (declining to apply a forum selection clause to copyright claims because those claims did not fall within the scope of the parties' rights and obligations under the contract); *Donachy v. Intrawest United States Holdings, Inc.*, Civ. A. No. 10-4038, 2011 U.S. Dist. Lexis 79567, at *10-11 (D.N.J. July 21, 2011) (denying a motion to dismiss for improper venue because *non-signatory* marketing agents

---

[5] Ivy Bridge also fails to recognize that this test, even if it was a correct statement of the law, would only apply where a non-signatory moves to enforce a forum selection clause, as was the case in *Sawyer*.  Of course, the Commission is a signatory to its bylaws, not a non-signatory attempting to enforce a forum selection clause in a contract to which it was not a party.

did not have standing to enforce a forum selection clause in a contract between a condo developer and purchasers); *Androutsakos v. M/V PSARA*, Civ. A. No. 02-1173, 2003 U.S. Dist. Lexis 25519 (D. Or. July 7, 2003) (denying a motion to dismiss for improper venue because the forum selection clause in the plaintiff's employment contract only applied to labor conditions, not the negligence claims at the crux of the plaintiff's complaint).  None of these cases is relevant to the Court's inquiry.

Finally, Ivy Bridge argues that the Commission cannot enforce the forum selection clause contained in the Joint Venture Master Agreement executed by Tiffin and Ivy Bridge because the Commission did not have a parent-subsidiary, third party beneficiary, or agent/successor relationship with any signatory to the Agreement.  Such a stringent test is entirely constructed by Ivy Bridge, and has not been adopted by courts in the Ninth Circuit.  To the contrary, courts in this Circuit routinely enforce forum selection clauses against non-signatories who are not parent-subsidiaries, third party beneficiaries, or successors in interest.  *See, e.g.*, *Mao v. Sanum Investments, Ltd.*, Civ. A. No. 14-721, 2014 U.S. Dist. Lexis 146983, at *9 n.4 (D. Nev. Oct. 15, 2014) (where the plaintiff executed a settlement agreement with two defendants regarding his business relationship with a third defendant, the third defendant (a non-signatory) could enforce the forum selection clause contained therein because he participated in the settlement negotiations); *Scott USA Inc. v. Patregnani*, Civ. A. No. 14-482, 2015 U.S. Dist. Lexis 51028, at *8 (D. Idaho Apr. 16, 2015) (noting that while the personal guarantor to a line of credit was not a signatory to a forum selection clause in the contract between the lender and borrower, he could still enforce it against the borrower because the dispute arose out of the borrower's default).

The claims against the Commission plainly arise from, and are closely related to, the contract between Tiffin and Ivy Bridge which contains an applicable forum selection clause.  The Commission is not required to show anything more for it to have standing to enforce that forum selection clause against Ivy Bridge—a provision that Ivy Bridge expressly agreed to when it entered into its joint venture partnership with Tiffin.  That forum selection clause is valid and enforceable, and consequently, the Court should grant the Commission's Motion based on improper venue.

**F.      Ivy Bridge Cannot Dispute that Litigating in this Forum is Exceedingly Inconvenient.**

Ivy Bridge's objections to a transfer to the Northern District of Illinois, while conclusory at best, are also flawed for several material reasons, including: (1) the Commission has established that venue is in fact proper in the Northern District of Illinois; (2) Illinois has a substantial relationship to the contracts at issue in this case; and (3) the Commission does not have substantial contacts with California. Each of Ivy Bridge's arguments is contradicted by the plain allegations in the Complaint, the contracts at issue, and the evidence adduced by the Commission in support of its Motion.

First, Ivy Bridge disagrees that a substantial part of the events giving rise to its claims took place in Illinois.[6] That argument willfully ignores the myriad of allegations in the Complaint itself which link the Commission's purported actions and omissions to Illinois, not California. (*See, e.g.*, Compl. ¶ 23 (the Commission required Tiffin to submit a change of control review to the Commission in Illinois); ¶ 27 (the Commission issued a report from Illinois which jeopardized Ivy Bridge's relationship with Tiffin); ¶ 31 (the Commission rejected Tiffin's proposals and threatened it with loss of accreditation, from Illinois); ¶ 32 (the Commission threatened Tiffin with sanctions, from Illinois).) None of these events took place in California. Further, even Ivy Bridge's own actions are linked to Illinois, not California. For instance, the Master Joint Venture Agreement between Tiffin and Ivy Bridge establishes that the purpose of the Ivy Bridge partnership was to "apply for and receive accreditation approval status from [the Commission]," which would have taken place in Illinois. (*See* Exhibit C to the Compl. at § 2.09(b).) Ivy Bridge cannot rely on the bare assertion in the Complaint that venue is proper because "a substantial part of the events or omissions giving rise to these claims occurred in this District." (*See* Compl. ¶ 47.)

---

[6] A mere typographical error in the Commission's moving papers mistakenly substituted "Pennsylvania" for "Illinois" when discussing the location of these acts. (*See* Commission's Mot. at 16.) Ivy Bridge does not—and cannot—credibly argue that it believes the Commission is moving to transfer this action to Pennsylvania.

That assertion is completely conclusory and woefully insufficient to establish that venue is proper in this District.

Second, Ivy Bridge claims that Illinois "has no relation" to the agreements between Tiffin and Ivy Bridge. (*See* Opp. Br. at 20.) Yet the Master Joint Venture Agreement provides that Ivy Bridge's purpose is to design, develop, and offer an academic program that meets the standards of the Commission, a regional accreditor which is located in Illinois. (Exhibit C to the Compl. at § 2.09(a).) It also expressly contemplates Ivy Bridge's obligations to apply for and receive accreditation from the Commission in Illinois. (*See id.* at § 2.09(b).) The Master Joint Venture Agreement therefore is substantially linked to the Northern District of Illinois, and Ivy Bridge's assertions to the contrary are not credible.

Finally, contrary to Ivy Bridge's unfounded assertions, the Commission does not have substantial contacts with the state of California. As set forth fully *supra* and in the Commission's moving papers, this Court lacks personal jurisdiction over the Commission. However, to the extent a question of jurisdiction or venue exists, "[c]ourts have repeatedly held that a change of venue from a forum where there is a difficult question of personal jurisdiction or venue to a district where there are not such uncertainties serves the interest of justice." *Multistate Legal Studies, Inc. v. Marino*, Civ. A. No. 96-5118, 1996 U.S. Dist. Lexis 20752, at *33 (C.D. Cal. Nov. 5, 1996) (granting a motion to transfer venue because there were substantial questions relating to jurisdiction and venue, and the parties would undergo significant discovery into mere preliminary matters if the case were not transferred). Transferring this case to the Northern District of Illinois, where there are no questions regarding jurisdiction over the Commission or proper venue, would undoubtedly be in the interests of justice, and would avoid unnecessary expense and delay in adjudicating this action.

Accordingly, if the Court finds that jurisdiction and venue are proper, the Court should nonetheless grant the Commission's Motion and transfer this action to the Northern District of Illinois.

### III. CONCLUSION

For the forgoing reasons, and for those set forth in the Commission's moving papers, this

1  Court should dismiss this action or transfer it to the United States District Court for the Northern
2  District of Illinois.
3
4  Date: September 9, 2015                                    ELLIOTT GREENLEAF, P.C.
5
6                                                              _____/s/_____
7                                                              By: Mary E. Kohart (*pro hac vice*)
                                                                Attorney for Defendant

DEFENDANT HIGHER LEARNING COMMISSION'S REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS, OR IN THE ALTERNATIVE TO TRANSFER VENUE