United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IVY BRIDGE UNIVERSITY, LLC f/k/a )   Case No. 15-CV-02187-SC
Ivy Bridge College, LLC,          )
                                  )   ORDER GRANTING DEFENDANT'S
            Plaintiff,            )   MOTION TO DISMISS
                                  )
      v.                          )
                                  )
                                  )
HIGHER LEARNING COMMISSION, and  )
Does 1 through 25, inclusive,     )
                                  )
            Defendants.           )
                                  )
                                  )
_____ )

     Now before the Court is Defendant Higher Learning Commission's ("HLC") motion to dismiss for lack of personal jurisdiction and improper venue.  ECF No. 22 ("Mot.").  In the alternative, HLC asks the Court to transfer venue to the Northern District of Illinois for the convenience of the parties and witnesses and in the interest of justice.  Mot. at 15-21.  The motion is fully briefed[1] and suitable for disposition without oral argument pursuant to Local Rule 7-1(b).  For the reasons set forth below, Defendant's motion is GRANTED for lack of personal jurisdiction.  Defendant's

_____

[1] ECF Nos. 33 ("Opp'n"), 34 ("Reply").

motion to dismiss for improper venue and motion to transfer venue are DENIED AS MOOT.

**I. BACKGROUND**

In 2007, Plaintiff Ivy Bridge, a California company, entered into a joint venture with Tiffin University, a 127-year-old accredited university based in Ohio, to create Ivy Bridge of Tiffin, an online degree program that integrated the faculty and coursework of Tiffin with an online environment created by Ivy Bridge. ECF No. 1 ("Compl.") ¶¶ 15-16.

Defendant HLC is an independent non-profit corporation recognized by the United States Department of Education as a regional accreditor. ECF No. 23 ("Lootens-White Decl.") ¶ 5. HLC accredits degree-granting post-secondary educational institutions, including Tiffin, in the North Central Region, which spans the following states: Arizona, Arkansas, Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, New Mexico, North Dakota, Ohio, Oklahoma, South Dakota, West Virginia, Wisconsin, and Wyoming. Id. As Tiffin is located in Ohio, HLC is responsible for granting and renewing its accreditation. Importantly, however, HLC does not accredit any educational institutions that are based in California. Id. ¶ 7. Even so, some of its accredited institutions do have branch campuses in California that HLC visits on occasion. Id. ¶ 8. Between 2009 and 2014, for example, HLC conducted approximately 40 site visits at branch campuses in California. Id. ¶ 9.

HLC conducts its accreditation work using "peer reviewers." These reviewers are comprised of volunteers from various member

**United States District Court**
For the Northern District of California

1    universities.   The reviewers responsible for the actions at issue

2    in this litigation are located at universities in Wisconsin,

3    Indiana, West Virginia, Arizona, Michigan, Oklahoma, and Illinois.

4    Id. ¶ 13.

5        When HLC conducted its ten year review of Tiffin in 2010, it

6    praised Tiffin's partnership with Ivy Bridge, calling Ivy Bridge of

7    Tiffin "an excellent strategic initiative."  Compl. at 4.  It was

8    also at this time that Ivy Bridge disclosed to HLC that it would

9    eventually request independent accreditation for Ivy Bridge of

10   Tiffin as opposed to being accredited as a branch campus of Tiffin.

11       In early 2012, HLC required Tiffin to undergo a "change of

12   control" review of Ivy Bridge of Tiffin, citing the fact that Ivy

13   Bridge and Tiffin intended to eventually seek independent

14   accreditation for the online program.  Id. ¶ 23.  After completing

15   the review, HLC issued a very negative report regarding the Ivy

16   Bridge Partnership.[2]  Id. ¶ 27.  In response, Ivy Bridge and Tiffin

17   agreed to abandon the plan to seek independent accreditation and to

18   continue as a branch campus of Tiffin.  Id. ¶ 30.  HLC, however,

19   rejected that plan and, according to Plaintiff, "threatened Tiffin

20   with sanctions if it did not completely sever its ties with Ivy

21   Bridge. . . . If Tiffin refused, then Tiffin itself faced the

22   prospect of losing its accreditation."  Id. ¶ 31.  As a result,

23   Plaintiff alleges that HLC forced Tiffin to break its agreements

24   with Ivy Bridge and shutter the joint venture.  Id. ¶ 32.

25   ///

26   _____

27   [2] Plaintiff alleges that the negative review was a result of HLC
     "getting political pressure to punish any non-traditional form of
28   higher education."  Id. ¶ 29.

**United States District Court**
For the Northern District of California

Subsequently, Plaintiff claims that it sought to partner with Concordia University and Ohio Christian University. <u>Id.</u> ¶ 33. However, both schools, according to Plaintiff, were threatened by HLC with sanctions if they partnered with Ivy Bridge. <u>Id.</u> ¶ 33. As a result, Plaintiff claims that it was unable to continue as a business. <u>Id.</u> ¶ 35.

On May 14, 2015, Plaintiff filed its Complaint in this matter, alleging five claims for relief. Its first claim for relief alleges that HLC intentionally interfered with Tiffin's contract with Ivy Bridge. Its second claim for relief alleges that HLC intentionally interfered with Ivy Bridge's prospective business interests with Concordia University and Ohio Christian University. Its third claim for relief alleges that HLC negligently interfered with its prospective business interests with Tiffin. Its fourth claim for relief alleges that HLC induced Tiffin to breach its contract with Ivy Bridge. Finally, its fifth claim for relief alleges unfair competition under Cal. Bus. & Prof. Code § 17200, <u>et seq.</u>.

In the instant motion, HLC moves the court under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for an order dismissing the Complaint for lack of personal jurisdiction and improper venue. Alternatively, HLC moves for an order transferring this action to the Northern District of Illinois on the grounds of <u>forum non conveniens</u>.

## II. <u>LEGAL STANDARD</u>

A motion to dismiss for lack of personal jurisdiction is governed by Fed. R. Civ. P. 12(b)(2), and a district court's

**United States District Court**
For the Northern District of California

determination whether to exercise personal jurisdiction is a question of law. <u>Rio Properties, Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1019 (9th Cir. 2002). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004); <u>see also</u> <u>Dole Food, Inc. V. Watts</u>, 303 F.3d 1104, 1108 (9th Cir. 2002). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990). A "prima facie" showing means that the plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. <u>See</u> <u>Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1129 (9th Cir. 2003); <u>Caruth v. International Psychoanalytical Ass'n</u>, 59 F.3d 126, 128 (9th Cir. 1995). Uncontroverted allegations in the plaintiff's complaint must be taken as true. <u>AT & T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996). Although the plaintiff cannot simply rest on the bare allegations of the complaint, conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. <u>Schwarzenegger</u>, 374 F.3d at 800.

Where, as here, there is no federal statute governing personal jurisdiction, the law of the state in which the Court sits applies. <u>CollegeSource, Inc. v. AcademyOne, Inc.</u>, 653 F.3d 1066, 1073 (9th Cir. 2011); <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute, Cal. Civ. Proc.

**United States District Court**
For the Northern District of California

1    Code § 410.10, "is coextensive with federal due process

2    requirements, [so] the jurisdictional analyses under state law and

3    federal due process are the same." Schwarzenegger, 374 F.3d at

4    800-01.  Federal due process requires that a nonresident defendant

5    have "certain minimum contacts" with the forum state of such a

6    nature that the exercise of personal jurisdiction "does not offend

7    'traditional notions of fair play and substantial justice.'"

8    International Shoe Co. v. State of Washington, Office of

9    Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945)

10   (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  This

11   constitutional test may be satisfied by showing that (1) the

12   defendant has "substantial" or "continuous and systematic" contacts

13   with the forum state -- i.e., "general jurisdiction," -- or (2)

14   there is a strong relationship between the defendant's forum

15   contacts and the cause of action -- i.e., "specific jurisdiction."

16   Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 839 (9th

17   Cir. 1986).  See also Ziegler v. Indian River County, 64 F.3d 470,

18   473 (9th Cir. 1995).

19

20   **III.  DISCUSSION**

21        **A.   General Jurisdiction**

22        As the Supreme Court held in Daimler AG v. Bauman,

23        only a limited set of affiliations with a forum will
24        render a defendant amenable to all-purpose [i.e.,
         general] jurisdiction there.  For an individual, the
         paradigm forum for the exercise of general jurisdiction
25       is the individual's domicile; for a corporation, it is an
         equivalent place, one in which the corporation is fairly
26       regarded as at home. . . . With respect to a corporation,
         the place of incorporation and principal place of
27       business are paradigm . . . bases for general
         jurisdiction. . . .   These bases afford plaintiffs

28

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

134 S. Ct. 746, 760 (2014) (citations omitted).

The standard for establishing general jurisdiction outside of a defendant corporation's place of incorporation or principal place of business is "fairly high . . . and requires that the defendant's contacts be of the sort that approximate physical presence." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id.

Here, neither HLC's place of incorporation nor its principal place of business are in California. While general jurisdiction can theoretically be established in other forums, it would require "affiliations . . . so continuous and systematic as to render [HLC] essentially at home." Daimler AG, 134 S. Ct. at 760-61 (citations omitted). As explained below, HLC's activities in California plainly do not approach that level.

HLC has no offices or staff in California, is not registered to do business in the state, has no registered agent for service of process in the state, and pays no California state taxes. Further, HLC is not regulated by any California agency; none of its officers or directors are domiciled in California; and it does not conduct any corporate affairs in the state. Importantly, HLC does not accredit any schools that have main campuses in California. Although its volunteer reviewers from other universities

7

occasionally visit branch campuses in California to verify that the locations exist and appear to be reasonable facilities in which to host classes, these occasional visits -- only 40 from 2009 to 2014 -- do not "render [HLC] essentially at home" in California.  Id. at 760-61.

Accordingly, Ivy Bridge has failed to establish general jurisdiction over HLC.  The Court now turns to whether Ivy Bridge can establish personal jurisdiction by means of specific jurisdiction.

**B.   <u>Specific Jurisdiction</u>**

A defendant who is not "at home" in the forum state and thus subject to general jurisdiction may still be subject to "specific" jurisdiction on claims related to its activities or contacts there. <u>See</u> <u>Walden v. Fiore</u>, 134 S.Ct. 1115, 1121, n.6 (2014); <u>International Shoe</u>, 326 U.S. at 317.  The Ninth Circuit employs a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, <u>i.e.</u>, it must be reasonable.

<u>Picot v. Weston</u>, 780 F.3d 1206, 1211-12 (9th Cir. March 19, 2015). "The plaintiff has the burden of proving the first two prongs.  If he does so, the burden shifts to the defendant to set forth a

**United States District Court**
For the Northern District of California

8

compelling case that the exercise of jurisdiction would not be
reasonable."  Id.

### 1.  Purposeful Direction

As to the first prong, the Ninth Circuit applies a "three-part
effects test" -- also called the "purposeful direction test" --
for claims sounding in tort "and look[s] to evidence that the
defendant has directed its actions at the forum state, even if
those actions took place elsewhere."  Id.  A defendant has
purposefully directed its activities at the forum if it

(1) committed an intentional act,

(2) expressly aimed at the forum state,

(3) causing harm that the defendant knows is likely to be
suffered in the forum state.

Id. at 1214.  In applying this test, a court "must 'look[ ] to the
defendant's contacts with the forum State itself, not the
defendant's contacts with persons who reside there.'  Thus, a 'mere
injury to a forum resident is not a sufficient connection to the
forum.'"  Id. (quoting Walden, 134 S.Ct. at 1122).

As to the first prong of the effects test, the meaning of the
term "intentional act" is essentially the same as in the context of
intentional torts: "the defendant must act with the 'intent to
perform an actual, physical act in the real world.'"  Id. (quoting
Schwarzenegger, 374 F.3d at 806).  Here, Plaintiff satisfies the
first prong of the effects test because it alleges intentional
interference with a contract and prospective business interests.

The parties dispute whether the alleged acts caused harm that
HLC knew was likely to be suffered in California.  HLC claims that
Ivy Bridge told it that it was based in Ohio.  Ivy Bridge claims

**United States District Court**
For the Northern District of California

that HLC was aware that it was based in California.  The Court need not resolve this dispute, however, because Ivy Bridge clearly cannot satisfy the second prong -- that HLC's alleged tortious acts were expressly aimed at California.

The second prong of the effects test, "express aiming," asks whether the defendant's allegedly tortious action "was expressly aimed at the forum."  Id. at 1214.  "The exact form of [the] analysis varies from case to case and depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."  Id.

Ivy Bridge argues that "the defendant needs simply to have aimed its conduct at a known California resident."  Opp'n at 8. Not so.  In Walden, the Supreme Court held that personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum.  134 S.Ct. at 1122; see also World-Wide Volkswagen Corp. v. Woodson, 44 US 286, 297 (1980) (holding that foreseeability of causing injury in the forum state is not enough by itself; rather, "the foreseeability that is critical . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there").  The Walden Court further found that there was not jurisdictionally sufficient contact where the plaintiff's injury was not "tethered to [the forum state] in any meaningful way" such that the plaintiff would have experienced the same injury regardless of where he lived or traveled.  Id. at 1125.

Applying the principles of Walden and Picot, it is clear that HLC's allegedly tortious actions were not expressly aimed at

United States District Court
For the Northern District of California

California such that specific jurisdiction would be appropriate. The acts in question -- conducting accrediting activities at Tiffin and allegedly threatening to withdraw Tiffin's accreditation -- were conducted entirely in Illinois and Ohio, without entering California.  Further, Ivy Bridge's alleged injury was not tied to California, as it would have occurred in any state in which Ivy Bridge chose to locate itself and conduct business.  See id. at 1125.

In sum, HLC's actions were not purposefully directed at California because they were not expressly aimed at California.  As a result, Ivy Bridge has failed to make a prima facie showing of specific personal jurisdiction over HLC.  Although this alone is sufficient to defeat specific jurisdiction, the Court addresses the second prong of the test for specific jurisdiction below.

### 2.   Arising Out Of Forum-Related Activities

"The Ninth Circuit applies a 'but-for' test to determine whether a particular claim arises out of or is related to forum-related activities." BenQ Am. Corp. v. Forward Elecs. Co., Civ. A. No. 05-2409, 2005 U.S. Dist. Lexis 38648, at *18 (N.D. Cal. Dec. 1, 2005) (citing Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995)).  Thus, Ivy Bridge must show that it would not have been injured "but for" HLC's contacts with California.  See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002); see also In re Wireless Facilities, Inc. Derivative Litig., 562 F. Supp. 2d 1098, 1104 (S.D. Cal. 2008) (granting a motion to dismiss for lack of personal jurisdiction where two defendants' visits to California were not causally related to the allegations).

11

**United States District Court**
For the Northern District of California

From 2009 to 2014, HLC's volunteer reviewers from outside California made approximately 40 visits to CAlifornia to branch campuses of non-California-based universities.  But for these visits, however, the claims against HLC in this case would still have arisen.  HLC's alleged tortious conduct took place in Ohio where Tiffin was located and where HLC conducted various peer review visits, and in Illinois, where HLC's offices are located and where its decisions were made.  Indeed, HLC's contacts with California (relating to its evaluation of branch campuses) have nothing to do with Ivy Bridge's claims.  Thus, Ivy Bridge cannot show that it would not have been injured "but for" HLC's alleged contacts with California.

Plaintiff claims that its allegations pass the "but for" test because "[b]ut for all the various wrongful acts that Defendant aimed at Ivy Bridge, a known California resident, the claims in this suit would not have arisen." Mot. at 11.  That is not the test.  If it were, specific jurisdiction would turn solely on whether the Plaintiff is a resident of the forum state.

For these reasons, HLC's allegedly tortious conduct did not arise out of HLC's California-related activities.  Thus, even if Ivy Bridge had carried its burden of establishing purposeful direction, it would nevertheless fail the second prong of the effects test.

In sum, Ivy Bridge has failed to make a prima facie showing of specific personal jurisdiction over HLC for two independent reasons: (1) HLC's allegedly tortious conduct was not purposefully directed at California, and (2) Ivy Bridge's claims did not arise out of HLC's California-related activities.  Because Ivy Bridge has

failed to carry its burden on the first two prongs, the burden has
not shifted to HLC to establish that the forum is unreasonable.
The Court therefore need not address it.  Accordingly, the Court
GRANTS HLC's motion to dismiss for lack of specific jurisdiction.

## IV.  <u>CONCLUSION</u>

    For the forgoing reasons, Defendant's 12(b)(2) motion to
dismiss for lack of personal jurisdiction is GRANTED.  Defendant's
motion to dismiss for improper venue and motion to transfer venue
is DENIED AS MOOT.


    IT IS SO ORDERED.


    Dated: October 28, 2015

                          UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California